FILED

UNITED STATES DISTRICT COURT DEC 14 AM 10: 29
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

    **Plaintiff,**

v.                  Case No. 6:18-cv- 2141 -orl -41KRS

**$67,040 IN U.S. CURRENCY,**

    **Defendant.**

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America brings this complaint and alleges upon information and belief, in accordance with Supp'l Rule G(2), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, as follows:

## NATURE OF THE ACTION

1.    This is a civil action *in rem* to forfeit to the United States of America, pursuant to 21 U.S.C. § 881(a)(6), approximately $67,040 in currency seized from Shannon Nicole Smith at the Orlando International Airport (Defendant Funds).

## JURISDICTION AND VENUE

2.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345, which provides the Court with jurisdiction over

all civil actions commenced by the United States, and pursuant to 28 U.S.C. §

1355, which provides the Court with jurisdiction over actions to recover or

enforce forfeitures.

3.    This Court has *in rem* jurisdiction over the Defendant Funds

because venue properly lies in the Middle District of Florida pursuant to 28

U.S.C. § 1395.

4.    Venue is proper in the United States District Court for the

Middle District of Florida, pursuant to 28 U.S.C. § 1395(b), because the

Defendant Funds were found and seized in this district.

### THE DEFENDANT *IN REM*

5.    The Defendant Funds consist of approximately $67,040 in

United States currency seized from Shannon Nicole Smith on June 21, 2018 at

Orlando International Airport (OIA) by law enforcement officers who

determined that there was probable cause to believe that the Defendant Funds

constituted: (1) money furnished or intended to be furnished by a person in

exchange for a controlled substance in violation of the Controlled Substances

Act; (2) proceeds traceable to such an exchange; or (3) money used or

intended to be used to facilitate a violation of the Controlled Substances Act.

2

6.      The Drug Enforcement Administration (DEA) took custody of the Defendant Funds, which remain in the custody of the United States.   As set forth in Supp'l Rule G(3)(b)(i), the Clerk of Court must issue a warrant to arrest the Defendant Funds if they are in the government's possession, custody, or control.

## BASIS FOR FORFEITURE

7.      The Defendant Funds are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because they constitute: (1) money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act.

## FACTS

8.      The facts and circumstances supporting the forfeiture of the Defendant Funds have been provided by DEA Special Agent Frank A. Chiaradio, who states as follows.

9.      On June 21, 2018, Shannon Nicole Smith was ticketed to fly on American Airlines flight #227 from Orlando, Florida to Los Angeles,

3

California at approximately 11:33 a.m.   Based upon SA Chiaradio's training and experience, he knows California to be a source state for marijuana.

10.   After Smith checked in one of her suitcases at the airline counter and began walking in the direction of the Transportation Security Administration (TSA) checkpoint, two law enforcement officers approached Smith to inquire about her travel.   Thereafter, Smith voluntarily spoke with a series of officers who work with the Orlando Airport Interdiction Unit.

11.   Smith told them that she purchased her ticket for the flight approximately two days prior and that she was traveling to Los Angeles to visit her brother who lived in Los Angeles and in Colorado.   Officers knew this information to be false, as Smith had purchased her one-way ticket the day before (on June 20th).   Smith also said she was moving to California, and did not plan on returning to Florida.

12.   Smith said that she packed her own carry-on suitcase and purse, but that her mother had packed her checked suitcase.   Smith said no one gave her any packages to travel with which contained illegal contraband, large sums of U.S. Currency, or to which she did not know its contents.

13.   Smith said she was traveling with a total of approximately $6,000, which was located inside her carry-on suitcase (approximately $3,000)

4

and her purse (approximately $3,000).   Smith then consented to a search of her carry-on suitcase, checked suitcase, and purse.

14.   Smith showed officers a bundle of approximately $3,000 which she took out of her purse.   One of the officers then began to search her carry-on suitcase and immediately located small bundles of U.S. Currency banded together and concealed within women's clothing.   When asked again how much money she was carrying (because it appeared she had more than $3,000 in her carry-on suitcase), Smith replied she thought approximately $30,000 to $35,000.

15.   Smith told officers that she had no other money – specifically that there was no money in her checked suitcase.   However, when an officer searched the checked suitcase, he located a number of additional bundles of U.S. Currency rubber banded together, a large blanket, a bathrobe, and men's clothing.   Smith denied knowledge of the money in her checked suitcase. Indeed, she claimed her mother had packed her suitcase.

16.   Smith then told officers the money in her possession was from an inheritance from when her grandmother passed away a year ago, but she was unsure of the amount of the inheritance.   Smith said she retrieved the money from her bank account at GTE Credit Union in Tampa, but then later gave a

conflicting statement saying that her mother had given her the inheritance money about a week or two ago in cash.

17.     Smith showed an officer her bank account information through her cellular phone that showed a savings balance of $10,000 and a checking balance of $617.84.   Smith said she had no other bank accounts.

18.     An officer called and spoke to Smith's mother, Lorraine Smith. Lorraine Smith said she had dropped off her daughter at the airport a few minutes ago.   Lorraine Smith said she did not pack any of her daughter's bags and did not give her any money.   Lorraine Smith believed her daughter was traveling to California for a few days to look for a car or a horse but was unsure exactly why.   Lorraine Smith said that her daughter did receive an inheritance of approximately $25,000, but that she had received the inheritance years ago.

19.     An officer also called Smith's brother, David Smith.   David Smith said he knew his sister was speaking with law enforcement officers because she had been texting with him while officers were speaking to her. David Smith said he lived in Colorado, but was thinking about moving to Los Angeles.   David Smith said he was meeting his sister in Los Angeles.

6

20.    Smith said she was going to stay at the Historic Mayfair hotel in downtown Los Angeles and provided officers with a reservation.   The reservation showed her checking in on June 21, 2018 and checking out on June 22, 2018.   Smith said she was going to stay with her brother at his place for the rest of her trip.

21.    While still speaking with officers, Smith continuously texted and began to add up the bundles of U.S. Currency using the calculator on her phone.   Smith said that all of the money that was in her carry-on suitcase was in bundles of $3,000 and that she counted it and rubber banded it herself. Smith then told officers she believed she was carrying a total of $42,000.

22.    Smith also told officers she had been a bartender since she was 18 years old and currently worked at Beef O'Brady's in Tampa (at the time, Smith was 21 years old).   Smith said she was paid through direct deposit and was unsure of how much money she made.

23.    During the interview with officers, Smith also consented to a search of her cellular phone.   A search of the phone revealed photographs

detailing numerical amounts associated with names of people, which, based

upon the officers' training and experience, appeared to be a drug ledger:



along with amounts of what officers knew, based upon their training and

experience, to be types of marijuana, including kush bubba, south fork

sherbert, and sunset sherbert:



24.    Thereafter, a properly trained narcotics detection dog, "Gabi,"

positively alerted to the presence of the odor of drugs on the Defendant Funds.

Gabi is trained to detect the odor of six controlled substances: cannabis,

cocaine HCL, cocaine base, heroin, methamphetamine, and MDMA.

25.     Individuals who handle controlled substances often get traces of the substances on their hands and clothing.   These trace amounts of a controlled substance can easily be spread to other items the individual touches such as currency.   A positive alert to U.S. currency by a properly trained dog indicates that the currency had either been handled by someone who had trace amounts of a controlled substance on their hands, or the currency had recently been in close proximity to a controlled substance.

26.     DEA then seized the U.S. currency found in Smith's purse, carry-on bag, and suitcase, which had all been wrapped in rubber bands:



10

27.    The seized money was taken to Loomis Financial Services where it was counted.   The official count was $67,040.   The money was comprised of:

| | |
|---|---|
| 144 | $100 bills |
| 108 | $50 bills |
| 2,353 | $20 bills |
| 17 | $10 bills |
| 10 | $1 bills |

Based upon SA Chiaradio's training and experience, the specific denomination amounts are consistent with street-level drug sales.

28.    Records from the Florida Department of Labor and Employment Security indicate that the reported income for Smith was as follows:

2017 = $17,205.62

2016 = $12,653.19

2015 = $9,289.62

## CONCLUSION

Based on the aforementioned facts, SA Chiaradio believes that sufficient probable cause exists to believe that the Defendant Funds are: 1) money furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; and/or 3) money used or intended to be used to facilitate

11

a violation of the Controlled Substances Act.   Thus, the Defendant Funds are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, pursuant to Supplemental Rule G, Plaintiff United States of America requests that this Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(1), initiate a process of forfeiture against the Defendant Funds, and duly notice all interested parties to appear and show cause why the forfeiture should not be decreed.   The United States further requests the Court order the Defendant Funds forfeited to the United States for disposition according to law and grant the United States such further relief as this case may require.

Dated: December 13 , 2018

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By:   Nicole M. Andrejko
Assistant United States Attorney
Florida Bar No. 0820601
400 West Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
Facsimile:   (407) 648-7643
E-Mail:      Nicole.Andrejko@usdoj.gov

12

## VERIFICATION

I, Frank A. Chiaradio, hereby verify and declare under penalty of perjury, that I am a Special Agent with the Drug Enforcement Administration, and pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case together with other DEA Special Agents and Task Force Officers.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this *13* day of December, 2018.

Frank A. Chiaradio, Special Agent
Drug Enforcement Administration

13

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS
$67,040.00 in United States Currency

County of Residence of First Listed Defendant   Orange
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question *(U.S. Government Not a Party)*

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane — ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability — Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & — ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander — Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' — Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability — ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 340 Marine — Injury Product ☐ 345 Marine Product — Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | Liability — **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 350 Motor Vehicle — ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle — ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | Product Liability — ☐ 380 Other Personal | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | ☐ 360 Other Personal — Property Damage | Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | Injury — ☐ 385 Property Damage | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | ☐ 362 Personal Injury - — Product Liability | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | Medical Malpractice **CIVIL RIGHTS** — **PRISONER PETITIONS** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 440 Other Civil Rights — **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 441 Voting — ☐ 463 Alien Detainee | | | |
| ☐ 240 Torts to Land | ☐ 442 Employment — ☐ 510 Motions to Vacate | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 443 Housing/ — Sentence | | | |
| ☐ 290 All Other Real Property | Accommodations — ☐ 530 General | **IMMIGRATION** | | |
| | ☐ 445 Amer. w/Disabilities - — ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| | Employment — **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☐ 446 Amer. w/Disabilities - — ☐ 540 Mandamus & Other | | | |
| | Other — ☐ 550 Civil Rights | | | |
| | ☐ 448 Education — ☐ 555 Prison Condition | | | |
| | — ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. § 881(a)(6)

Brief description of cause:
proceeds traceable to and/or money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 & 846

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*

JUDGE _____   DOCKET NUMBER _____

DATE   10/14/18

SIGNATURE OF ATTORNEY OF RECORD
Nicole M. Andrejko

FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____